Stacey D. Adams, Esq. (NJ Bar #022481998)
Dylan C. Dindial, Esq. (NJ Bar #073762014)
**LITTLER MENDELSON, P.C.**
A Professional Corporation
One Newark Center, Eighth Floor
Newark, New Jersey 07102
973.848.4700
Attorneys for Defendants *The Gap, Inc., Banana Republic, LLC, and Jill Matejunas*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DESTINY TOMPKINS,<br><br>               Plaintiff,<br><br>vs.<br><br>THE GAP, INC., BANANA REPUBLIC, LLC, JILL MATEJUNAS & MICHAEL GENNIS,<br><br>               Defendants. | Civil Action No. 17-cv-9759<br><br>**NOTICE OF REMOVAL**<br><br>*<u>Electronically Filed</u>* |

**TO:  THE CLERK AND THE HONORABLE JUDGES
OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

Defendants The Gap, Inc., Banana Republic, LLC, and Jill Matejunas (collectively, "Defendants") hereby file this Notice of Removal of the above-captioned action to the United States District Court for the Southern District of New York, from the Supreme Court of the State of New York, County of New York, where the action is now pending, as provided by Title 28, United States Code, Chapter 89 and state:

1.     Upon information and belief, Plaintiff Destiny Tompkins ("Plaintiff") commenced this action on November 13, 2017, by filing a Complaint in the Supreme Court of the State of New York, County of New York, captioned *Destiny Tompkins v. The Gap, Inc., Banana Republic, LLC, Jill Matejunas, and Michael Gennis*, bearing Index No. 160041/2017 ("the State Court Action"). The State Court Action is now pending in the Supreme Court of the State of New York, County of New York.

2.      Plaintiff provided a courtesy copy of the Complaint to Defendants' counsel on November 13, 2017 and, approximately one-week later, Defendants' counsel formally accepted service of said Complaint.  This Notice of Removal is filed within 30 days of November 13, 2017, as required by 28 U.S.C. § 1446(b).

3.      Attached hereto as **Exhibit A** is a copy of all process, pleadings and orders in the State Court Action, pursuant to 28 U.S.C. § 1446(a).

4.      The State Court Action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331 and which may therefore be properly removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. §§ 1331, 1441(a) and (c), and 1446 in that it arises under federal law and presents a federal question, namely whether Defendants violated 42 U.S.C. § 1981. See **Exhibit A**, Complaint and Jury Demand, Counts Three and Four.

5.      Additionally, federal courts may exercise supplemental jurisdiction over state law claims if they "form part of the same case or controversy" as claims that are properly within the jurisdiction of the federal court. See 28 U.S.C. ¶ 1367(a). Supplemental jurisdiction over Plaintiff's state law claims is proper because Plaintiff's claims for negligent/intentional infliction of emotional distress and for violations of the New York State Human Rights Law are related to Plaintiff's federal claim as it is part of the same case or controversy under Article III of the United States Constitution and because no novel or complex issue of state law predominates. See 28 U.S.C. §§ 1441(c) and 1367. Accordingly, removal of this case to this Court on the basis of federal question jurisdiction is proper.

7.      This Notice of Removal is being filed in the United States District Court for the Southern District of New York, the district court of the United States for the district and division within which the State Court Action is pending, as required by 28 U.S.C. §§ 1441(a) and 1446(a).

8.     Attached as **Exhibit B** is a copy of the Notice to the Clerk of the Supreme Court of the State of New York, County of New York of the Filing of the Notice of Removal, the original of which is being filed with the Clerk of the Supreme Court of the State of New York, County of New York, as required by 28 U.S.C. § 1446(d).

9.     Upon filing of this Notice of Removal, Defendants shall give written notice thereof to Plaintiff's counsel, John Horowitz, Esq., 61 Broadway, Suite 2125, New York, New York 10006, and to co-Defendant Michael Gennis, 40 Tamarack Lane, Pamona, NY 10970 and shall file copies of this Notice of Removal with the Clerk of the Supreme Court of the State of New York, County of New York, pursuant to 28 U.S.C. §1446(d).

10.     Attached as **Exhibit C** is a copy of the Notice to Adverse Party of Filing of Notice of Removal, the original of which is being served on Plaintiff's counsel pursuant to 28 U.S.C. § 1446(d).

11.     By filing this Notice of Removal, Defendants do not waive any defenses available to them at law, in equity or otherwise.

**WHEREFORE**, Defendants respectfully requests that this action proceed in this Court as an action properly removed to it.


                                        **LITTLER MENDELSON, P.C.**
                                        Attorneys for Defendants
                                        *The Gap, Inc., Banana Republic, LLC,*
                                        *and Jill Matejunas*



                                        By:___/s/ *Stacey D. Adams*_____
                                                Stacey D. Adams

Dated:  December 13, 2017

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| DESTINY TOMPKINS, | Index No. _160041/17_ |
| | Date Purchased _11/13/17_ |
| Plaintiff, | |
| -against- | **SUMMONS** |
| THE GAP, INC., BANANA REPUBLIC, LLC, JILL MATEJUNAS and MICHAEL GENNIS, | Basis of Venue CPLR § 503(a) |
| Defendants | |

*TO THE ABOVE NAMED DEFENDANT:*

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within twenty (20) days after the service of this summons, exclusive of the day of service, (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:     New York, New York
           November 10, 2017

**HOROWITZ LAW GROUP, PLLC**

By: _____
     JOHN D. HOROWITZ, ESQ.
     Attorneys for Plaintiff
     61 Broadway, Suite 2125
     New York, New York 10006
     (O) (212) 920-4503
     (F) (646) 918-1474
     jhorowitz@horowitzpllc.com

**Defendants' Addresses:**

The Gap, Inc.
c/o CT Corporation System
111 Eighth Avenue
New York, New York 10011

Banana Republic, LLC
c/o CT Corporation System
111 Eighth Avenue
New York, New York 10011

Jill Matejunas
3 Morningstar Lane
Oakland, New Jersey 07436

Michael Gennis
354 Richard Court
Pomona, New York 10970

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

DESTINY TOMPKINS,

                Plaintiff,

    - against-

THE GAP, INC., BANANA REPUBLIC,
LLC, JILL MATEJUNAS and MICHAEL
GENNIS,

                Defendants.

Index No. _____/2017

**COMPLAINT**

Plaintiff Destiny Tompkins ("Plaintiff" or "Tompkins"), by way of this Complaint against defendants The Gap, Inc. ("Gap"), Banana Republic, LLC ("Banana Republic"), Jill Matejunas and Michael Gennis (collectively, "Defendants"), through her attorneys, Horowitz Law Group, PLLC, sets forth and alleges as follows:

### SUMMARY

1.      Plaintiff is an African-American female.

2.      On or about September 19, 2017, Gap and/or Banana Republic (collectively, the "Company") hired Plaintiff to work as a Sales Associate at the Banana Republic store ("Store") located at the Westchester Mall, in White Plains, New York. At the time Plaintiff was hired, she wore her hair naturally.

3.      After commencing her employment with the Company, Plaintiff braided her hair, and worked for nearly a week at the Store without Store Manager Michael Gennis ("Gennis") threatening to terminate Plaintiff if she did not remove her braids. However, on or about October 4, 2017, Regional Manager Jill Matejunas ("Matejunas") visited the Store for less than an hour, observed the braids in Plaintiff's hair, and then left the Store. Shortly after Matejunas left the

Store, Gennis called Plaintiff into his office, and told Plaintiff that he and Matejunas felt that Plaintiff's braids were "too urban" and "unkempt", and were not consistent with the Company's image. Gennis used those seemingly facially neutral terms as code words to tell Plaintiff that she looked "too black" or "too African-American" for the Company's workplace.

4.      Gennis also told Plaintiff that she should put "shea butter" in her hair, ostensibly to help Plaintiff conform with the Company's image of not looking "too urban" (*i.e.*, too black or too African-American).  Put differently, Matejunas and Gennis wanted Plaintiff to look more Caucasian.

5.      Gennis then instructed Plaintiff that she would not be scheduled for any additional shifts, unless and until she took the braids out of her hair, thereby constructively discharging Plaintiff.

6.      Plaintiff was absolutely humiliated by Gennis' disgusting conduct, which the Company admits was "unacceptable."   Further, Plaintiff was not willing to conform to Defendants' expectation and/or policy of how a female, African-American employee should look, nor was she going to acquiesce to the unlawful terms and conditions of employment established by Defendants.  Despite only being a teenager, Plaintiff stood up to Gennis, and told him that she was not going to remove the braids from her hair.  Consequently, Plaintiff was constructively discharged from Company.

7.      Plaintiff posted the above events on social media, and there was overwhelming public response denouncing Gap's and/or Banana Republic's illegal conduct.

8.      Gap and/or Banana Republic issued a public statement in which it described Gennis' conduct as "unacceptable".

2

9.      However, the Company's greater concern was the negative publicity and consumer backlash being generated with respect to its illegal employment policies/practices.

10.     To mitigate the negative publicity, the Company terminated Gennis to try and silence Plaintiff and mollify the number of people who were opposed to and appalled by the Company's policy/practice of trying to eliminate employees who look "too urban" (*i.e.*, who look too black or African-American) from its workforce. The Company's public relations plan was to take superficial measures to create the appearance, but not the effect, of reinforcing equal employment opportunity in its stores, in the hope that the public outcry would dissipate.

11.     Accordingly, the Company terminated Gennis. However, the Company took no action against Matejunas. Further, upon information and belief, the Company did not distribute and/or update any dress code or grooming policy to clarify its professed tolerance and/or promotion of diversity in its Sales Associates' appearance, nor has the Company taken measures to review or update its training practices, or educate its employees about workplace diversity.

12.     Additionally, the Company has refused to provide Plaintiff with the results of its investigation of Plaintiff's claims, or with any dress or grooming policies that existed during Plaintiff's employment, demonstrating that any so-called investigation was mere window dressing, and that any such policies were created by the Company's managers as they deemed fit.

13.     The Company's policy/practice of taking measures to avoid having its African-American employees look "too urban" (*i.e.*, look too black or African-American) is not surprising considering that are no African-Americans on its 14-member leadership team: See http://www.gapinc.com/content/gapinc/html/aboutus/gapincexectives/gapincexecutives.html.

14.     Plaintiff has commenced this action to seek injunctive and equitable relief, and monetary damages, against Defendants for the harm she suffered as a direct result of their

discrimination and harassment, in violation of the New York State Human Rights Law, New York Executive Law §§ 290 *et seq.* ("NYSHRL") and 42 U.S.C. §1981.

## JURISDICTION AND VENUE

15.     The Court has personal jurisdiction over Defendants pursuant to Civil Practice Law and Rules ("CPLR") §§ 301 and 302.   Gap and Banana Republic are authorized to conduct business in the State of New York, and have dozens of stores throughout the State of New York.

16.     At all relevant times herein, the Company continuously and systematically conducted and transacted business within the State of New York.  Further, the events giving rise to this action took place in the State of New York, and bear a substantial relationship to the transaction of such business.

17.     Venue is proper pursuant to CPLR § 503 because Plaintiff resides in the State of New York, County of New York.

18.     Plaintiff will submit charges of discrimination with the Equal Employment Opportunity Commission ("EEOC").

## THE PARTIES

### A.     Plaintiff

19.     Plaintiff is a 19-year old African American female, who resides in the State of New York, County of New York.

20.     At all times relevant herein, Plaintiff met the definition of an employee under all applicable statutes, including but not limited to the NYSHRL and/or 42 U.S.C. §1981.

**B.** **Defendants**

21.     Gap is a foreign corporation duly authorized to do business in the State of New York, with its principal place of business located at 2 Folsom Street, 13th Floor, San Francisco, California 94105.

22.     Banana Republic is a foreign limited liability company duly authorized to do business in the State of New York, with its principal place of business located at 2 Folsom Street, 13th Floor, San Francisco, California 94105.

23.     Upon information and belief, Gap and Banana Republic have a parent-subsidiary relationship in that Banana Republic is a wholly owned subsidiary of Gap.

24.     The Company is engaged in the retail sale of men's and women's apparel through a network of retail stores through the United States of America, including the State of New York.

25.     Gap owns several brands of apparel, including Banana Republic, Old Navy, The Gap, Athleta, Intermix and Weddington Way, each of which, upon information and belief are wholly owned subsidiaries of Gap.

26.     At all times relevant herein, Gap met the definition of an employer under all applicable statutes, including but not limited to the NYSHRL and/or 42 U.S.C. §1981.

27.     At all times relevant herein, Banana Republic met the definition of an employer under all applicable statutes, including but not limited to the NYSHRL and/or 42 U.S.C. §1981.

28.     Upon information and belief, Matejunas is a Caucasian female, and lives in Oakland, New Jersey.

29.     At all times relevant herein, Matejunas met the definition of an employer under all applicable statutes, including but not limited to the NYSHRL and/or 42 U.S.C. §1981, and

functioned in a supervisory capacity towards Plaintiff and other African-American and/or minority employees.

30.    Upon information and belief, Gennis is a Caucasian male, and lives in Pomona, New York.

31.    At all times relevant herein, Gennis met the definition of an employer under all applicable statutes, including but not limited to the NYSHRL and/or 42 U.S.C. §1981, and functioned in a supervisory capacity towards Plaintiff and other African-American and/or minority employees.

## FACTUAL BACKGROUND

### A.    Plaintiff Is Hired At The Store.

32.    Gennis was employed by the Company as the Store Manager at the Store.

33.    Gennis reported directly to Matejunas, in her capacity as District Manager.  The Store was one of the locations that Matejunas was responsible for managing.

34.    Prior to Gennis' discharge, Matejunas supervised Gennis.

35.    On or about September 19, 2017, Plaintiff was hired to work at the Store as a Sales Associate.  At the time of her hire, Plaintiff did not have any braids in her hair.

36.    As part of her job duties, Plaintiff interacted with customers who came into the Store to purchase apparel.

37.    Plaintiff was not informed of any grooming policy at the time of hiring.

38.    Plaintiff was not given any equal employment opportunity training and/or advised as to what types of conduct could constitute unlawful discrimination.

39.    Plaintiff performed her job duties in an exemplary manner at all times relevant herein.

B.     **The Company Maintains Illegal Policies And Practices.**

40.     Upon information and belief, the Company's management is dominated by Caucasian male and female employees who perpetuate an objectively hostile work environment, permeated with discriminatory acts and omissions towards African-American employees.

41.     Upon information and belief, the corporate culture at the Company, with the participation of management, is permeated with discriminatory acts and omissions towards African-American employees, including requiring African-American employees to change their appearance to avoid looking "too urban" (*i.e.*, to avoid looking too black or African-American).

42.     At all times relevant herein, the Company maintained a policy and/or practice of regulating, classifying and/or eliminating hair styles and/or other appearances to threaten, intimidate, pressure and humiliate female African-American employees to change their hairstyles and/or appearances to avoid what the Company perceived as looking "too urban" (*i.e.*, looking too black or African-American).

43.     At all times relevant herein, the Company maintained a policy and/or practice of threatening, intimidating, pressuring and humiliating female African-American employees to conform to the Company's racial stereotypes about how female African-American employees should "look", including the policy and/or practice of requiring female African-American employees to avoid looking "too urban" (*i.e.*, looking too black or African-American).

44.     At all times relevant herein, the Company maintained a policy and/or practice of threatening, intimidating, pressuring and humiliating female African-American employees to

7

conform to the Company's expectations of how female African-American employees should look.

45.     In contrast to female African-American employees, female Caucasian employees are not threatened, intimidated, pressure or humiliated to change their hairstyle and/or appearance to conform to the Company's expectations of how its employees should look.

46.     The Company's managers, including Matejunas and Gennis, had and/or have the discretion and authority to make subjective and arbitrary employment decisions and selectively apply them to female African-American employees.

47.     The Company's managers, including Matejunas and Gennis, participated in employment decisions concerning the employees they supervise based on racial stereotypes and/or the employees' race.

**C.     Plaintiff Is Subject To Unlawful Discrimination.**

48.     On or about September 27, 2017, Plaintiff had her hair braided, and thereafter worked several shifts at the Store.

49.     During those shifts, Gennis did not tell Plaintiff that she had to remove her braids. However, at least one assistant Store Manager and/or Store Manager in training asked Plaintiff if she could place her braids in a ponytail because Gennis said that he wanted Plaintiff to change her hairstyle.

50.     On or about October 4, 2017, Matejunas visited the Store, and saw Plaintiff's braids for the first time.  Matejunas' visit to the Store was less than one (1) hour.

51.     Roughly fifteen (15) minutes after Matejunas left, Gennis called Plaintiff into his office.

52.   Gennis told Plaintiff that she had to remove her braids because he and Matejunas felt that they looked "too urban" and "unkempt".

53.   Gennis' use of the phrase "too urban" was a code word for "too black" and/or "too African-American", and was designed to imply that both he and Matejunas wanted their employees to conform to the Company's racial stereotypes about how female African-American employees should "look", which meant that Plaintiff should avoid looking "too black" or "too African-American".

54.   Indeed, Gennis explained that Matejunas had expressly instructed Gennis to tell Plaintiff to remove her braids, or words to that effect.

55.   Plaintiff was humiliated and extremely offended by Gennis' remark, and tried to lessen her embarrassment by explaining to Gennis that the braids protect her hair from damage, or words to that effect.

56.   In response, Gennis told Plaintiff to put "shea butter" in her hair.

57.   Further, Gennis told Plaintiff that he was not going to schedule her for any additional shifts, unless and until she removed the braids from her hair, or words to that effect.

58.   Plaintiff refused to be subject to Gennis' illegal discrimination, and told Gennis that she would not remove the braids from her hair, and would find work elsewhere, or words to that effect.  Gennis told Plaintiff that she should just leave the Store, and not return, or words to that effect.

59.   Plaintiff was offended, humiliated, shamed and intimated by Defendant's discriminatory actions, and she left the Store, cried, and did not return.

60.   Based on Defendants' illegal conduct, Plaintiff was constructively discharged from her job.

9

61.     By their acts and omissions, Defendants, intentionally and with aforethought, created, promoted and encouraged an objectively hostile and demeaning work environment for Plaintiff and/or other female African-American employees.

62.     By their acts and omissions, Defendants, intentionally and with aforethought, humiliated, shamed and demeaned Plaintiff.

63.     The pervasive and discriminatory policies and/or practices of Defendants have directly resulted in Defendants' acts being performed with impunity and without fear of reprisal.

64.     Defendants' acts and omissions are and/or were part of a policy and/or practice of violating employees' rights as guaranteed by antidiscrimination laws, including the NYSHRL and/or 42 U.S.C. §1981.

65.     Defendants' acts and omissions show that there was a meeting of the minds between the individually-named defendants who acted in unison to harass, humiliate, demean, shame and embarrass Plaintiff based on her race, and to compel Plaintiff to work in a hostile environment with the intent to bring about Plaintiff's constructive discharge, if she did not conform to the Company's illegal policies and/or practices.

66.     Plaintiff shall rely upon discovery to ascertain the nature, extent, scope and/or reach of Defendants' illegal employment policies and/or practices.

**D.     Gap Admits That Gennis Discriminated Against Plaintiff.**

67.     In defiance of the shame and humiliation Defendants subjected her to, on or about October 4, 2017, Plaintiff posted, in whole or in part, a summary and/or description of the Company's illegal conduct, which went viral.

68.     The overwhelming public response to Plaintiff's post(s) was to support Plaintiff, and criticize the Company.

10

69.     Upon information and belief, the Company was highly concerned about the negative publicity being generated with respect to its illegal employment policies/practices.

70.     Remarkably, the Company did not deny that its manager(s) had violated the law.

71.     Indeed, on or about October 8, 2017, the Company issued a statement admitting that:

> "This week, one or our store managers questioned an African American employee's braided hair style. Our team began with an immediate investigation and the manager involved was promptly removed from the store. Today we concluded the investigation and can confirm that the manager has been terminated from the company. Banana Republic has zero tolerance for discrimination. This situation was completely unacceptable, counter to our policies, and in no way reflects our company's beliefs and values."

72.     To further mitigate the negative publicity, the Company terminated Gennis to try and silence Plaintiff and mollify the number of people who were opposed to and appalled at the Company's policy/practice of trying to eliminate employees who look "too urban" (*i.e.*, who look to black or African-American) from its workforce.

73.     The Company's plan was to take superficial measures to create the appearance, but not the effect, of reinforcing equal employment opportunity in its stores, in the hope that the public outcry would dissipate.

74.     However, the Company took no action against Matejunas. Further, upon information and belief, the Company did not distribute and/or update any dress code or grooming policy to clarify its professed tolerance and/or promotion of diversity in its Sales Associates' appearance, nor has the Company taken measures to review or update its training practices, or educate its employees about diversity.

75.     Additionally, the Company has refused to provide Plaintiff with the results of its investigation of Plaintiff's claims, or with any dress or grooming policies that existed during

Plaintiff's employment, demonstrating that any so-called investigation was mere window dressing and that any such policies were created by the Company's managers as they deemed fit.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Discrimination and Hostile Environment In Violation of the NYSHRL Against All Defendants)

76.     Plaintiff repeats and re-alleges each and every allegation contained in each of the preceding paragraphs as if fully set forth herein.

77.     Defendants subjected Plaintiff to disparate treatment and/or a hostile work environment on the basis of her race, in violation of the NYSHRL.

78.     Defendants discriminated against Plaintiff with respect to the terms and conditions of her employment based on her race, in violation of the NYSHRL.

79.     Defendants have discriminated against Plaintiff on the basis of her race, in violation of the NYSHRL by, *inter alia*, subjecting Plaintiff to different terms and conditions of employment based on her race; demanding that Plaintiff change her appearance to avoid looking "too urban" (*i.e.*, to avoid looking too black or African-American); and refusing to permit Plaintiff to work at the Store until she changed her appearance to avoid looking "too urban" (*i.e.*, to avoid looking too black or African-American).

80.     Defendants discriminated against Plaintiff on the basis of her race, in violation of the NYSHRL by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent and/or remedy a hostile work environment that has included, *inter alia*, severe and pervasive discrimination and harassment of Plaintiff.

81.     By their acts and omissions, Defendants permitted and/or encouraged a work environment permeated with discriminatory intimidation and humiliation to the point that it was objectively hostile and abusive, in violation of the NYSHRL.

12

82.     As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer injuries, including but not limited to monetary and/or economic harm, mental anguish and emotional distress, for which she is entitled to an award of compensatory damages, in an amount to be determined by this Court and which exceeds the monetary jurisdictional limitations of all lower Courts together with her costs, disbursements, interest and reasonable attorneys' fees.

83.     Defendants' conduct was willful and malicious, and upon information and belief, involved the participation of upper management.

84.     As a result of the foregoing, Plaintiff seeks punitive damages, attorney's fees, costs and disbursements, in an amount no less than $1,000,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Individual Liability under the NYSHRL)

85.     Plaintiff repeats and re-alleges each and every allegation contained in each of the preceding paragraphs as if fully set forth herein

86.     The acts and omissions of Matejunas and Gennis were designed to aid and abet discrimination against Plaintiff, in violation of the NYSHRL.

87.     Matejunas and Gennis are individually liable under the NYSHRL.

88.     As a direct and proximate result of Matejunas' and Gennis' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer injuries, including but not limited to monetary and/or economic harm, mental anguish and emotional distress, for which she is entitled to an award of compensatory damages, in an amount to be determined by this Court and which exceeds the monetary jurisdictional limitations of all lower Courts together with her costs, disbursements, interest and reasonable attorney's fees.

13

89.     Matejunas' and Gennis' conduct was willful and malicious, and upon information and belief, constituted participation of upper management and/or was sanctioned by upper management.

90.     As a result of the foregoing, Plaintiff seeks punitive damages, attorney's fees, costs and disbursements, in an amount no less than $1,000,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Discrimination and Hostile Environment In Violation of 42 U.S.C. §1981 Against All Defendants)

91.     Plaintiff repeats and re-alleges each and every allegation contained in each of the preceding paragraphs as if fully set forth herein.

92.     Defendants subjected Plaintiff to disparate treatment and/or a hostile work environment on the basis of her race, in violation of 42 U.S.C. §1981.

93.     42 U.S.C. §1981 states, in part, as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

94.     Defendants discriminated against Plaintiff with respect to the terms and conditions of her employment based on her race, in violation of 42 U.S.C. §1981.

14

95.     Defendants have discriminated against Plaintiff on the basis of her race, in violation of 42 U.S.C. §1981 by, *inter alia*, subjecting Plaintiff to different terms and conditions of employment based on her race; demanding that Plaintiff change her appearance to avoid looking "too urban" (*i.e.*, to avoid looking too black or African-American); and refusing to permit Plaintiff to work at the Store until she changed her appearance to avoid looking "too urban" (*i.e.*, to avoid looking too black or African-American).

96.     Defendants discriminated against Plaintiff on the basis of her race, in violation of 42 U.S.C. §1981 by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent and/or remedy a hostile work environment that has included, *inter alia*, severe and pervasive discrimination and harassment of Plaintiff.

97.     By their acts and omissions, Defendants permitted and/or encouraged a work environment permeated with discriminatory intimidation and humiliation to the point that it was objectively hostile and abusive, in violation of 42 U.S.C. §1981.

98.     As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer injuries, including but not limited to monetary and/or economic harm, mental anguish and emotional distress, for which she is entitled to an award of compensatory damages, in an amount to be determined by this Court and which exceeds the monetary jurisdictional limitations of all lower Courts together with her costs, disbursements, interest and reasonable attorneys' fees.

99.     Defendants' conduct was willful and malicious, and upon information and belief, involved the participation of upper management.

100.    As a result of the foregoing, Plaintiff seeks punitive damages, attorney's fees, costs and disbursements, in an amount no less than $1,000,000.00.

15

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Individual Liability Under 42 U.S.C. §1981)

101.    Plaintiff repeats and re-alleges each and every allegation contained in each of the preceding paragraphs as if fully set forth herein

102.    The acts and omissions of Matejunas and Gennis were designed to aid and abet discrimination against Plaintiff, in violation of 42 U.S.C. §1981.

103.    Matejunas and Gennis are individually liable under 42 U.S.C. §1981.

104.    As a direct and proximate result of Matejunas' and Gennis' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer injuries, including but not limited to monetary and/or economic harm, mental anguish and emotional distress, for which she is entitled to an award of compensatory damages, in an amount to be determined by this Court and which exceeds the monetary jurisdictional limitations of all lower Courts together with her costs, disbursements, interest and reasonable attorney's fees.

105.    Matejunas' and Gennis' conduct was willful and malicious, and upon information and belief, constituted participation of upper management and/or was sanctioned by upper management.

106.    As a result of the foregoing, Plaintiff seeks punitive damages, attorney's fees, costs and disbursements, in an amount no less than $1,000,000.00.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

107.    Plaintiff repeats and re-alleges each and every allegation contained in each of the preceding paragraphs as if fully set forth herein

108.    Defendants intended to cause Plaintiff severe emotional distress.

109.    Defendants' conduct was extreme and outrageous, such that no reasonable person could be expected to endure it.

110.    Defendants' conduct caused Plaintiff to suffer severe emotional distress.

111.    Defendants' unlawful conduct was egregious, willful, wanton and/or in reckless disregard of Plaintiff's rights and, moreover, upon information and belief, involved the participation of upper management, thus warranting the imposition of punitive damages.

112.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer severe emotional distress, for which she is entitled to an award of compensatory damages, in an amount to be determined by this Court and which exceeds the monetary jurisdictional limitations of all lower Courts together with her costs, disbursements, interest and reasonable attorney's fees.

113.    Defendants' conduct was willful and malicious, and upon information and belief, involved the participation of upper management.

114.    As a result of the foregoing, Plaintiff seeks punitive damages, attorney's fees, costs and disbursements, in an amount no less than $1,000,000.00.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)

115.    Plaintiff repeats and re-alleges each and every allegation contained in each of the preceding paragraphs as if fully set forth herein.

116.    Defendants negligently caused Plaintiff severe emotional distress.

117.    Defendants' conduct was extreme and outrageous, such that no reasonable person could be expected to endure it.

118.    Defendants' conduct caused Plaintiff to suffer severe emotional distress.

17

119.  Defendants' unlawful conduct was egregious, willful, wanton and/or in reckless disregard of Plaintiff's rights and, moreover, upon information and belief, involved the participation of upper management, thus warranting the imposition of punitive damages.

120.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer severe emotional distress, for which she is entitled to an award of compensatory damages, in an amount to be determined by this Court and which exceeds the monetary jurisdictional limitations of all lower Courts together with her costs, disbursements, interest and reasonable attorney's fees.

121.  As a result of the foregoing, Plaintiff seeks punitive damages, attorney's fees, costs and disbursements, in an amount no less than $1,000,000.00.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Respondeat Superior)

122.  Plaintiff repeats and re-alleges each and every allegation contained in each of the preceding paragraphs as if fully set forth herein.

123.  The Company is liable for any and all damages incurred as a result of the actions and/or omissions of the individual defendants in this case and/or other individuals who engaged in unlawful conduct pursuant to the doctrine of *respondeat superior*.

124.  As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer injuries, including but not limited to monetary and/or economic harm, mental anguish and emotional distress, for which she is entitled to an award of compensatory damages, in an amount to be determined by this Court and which exceeds the monetary jurisdictional limitations of all lower Courts together with her costs, disbursements, interest and reasonable attorneys' fees.

18

125.    Defendants' conduct was willful and malicious, and upon information and belief, involved the participation of upper management.

126.    As a result of the foregoing, Plaintiff seeks punitive damages, attorney's fees, costs and disbursements, in an amount no less than $1,000,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief, as applicable:

A.      On the FIRST through SEVENTH CAUSES OF ACTION, monetary and compensatory damages in an amount to be determined at trial;

B.      On the FIRST through SEVENTH CAUSES OF ACTION, punitive damages in the sum of ONE MILLION ($1,000,000) DOLLARS;

C.      On the FIRST through SEVENTH CAUSES OF ACTION, attorney's fees and costs in an amount to be determined at trial; and

D.      On the FIRST through SEVENTH CAUSES OF ACTION, such other and further relief, including equitable relief, as this Court may deem just, appropriate and proper including but not limited to costs, disbursements and interest.

Dated:      New York, New York
            November 10, 2017

**HOROWITZ LAW GROUP, PLLC**

By: _____
JOHN D. HOROWITZ, ESQ.
Attorneys for Plaintiff
61 Broadway, Suite 2125
New York, New York 10006
(O) (212) 920-4503
(F) (646) 918-1474
jhorowitz@horowitzpllc.com

19

# EXHIBIT B

Stacey D. Adams, Esq. (NJ Bar #022481998)
Dylan C. Dindial, Esq. (NJ Bar #073762014)
**LITTLER MENDELSON, P.C.**
A Professional Corporation
One Newark Center, Eighth Floor
Newark, New Jersey 07102
973.848.4700
Attorneys for Defendants *The Gap, Inc., Banana Republic, LLC, and Jill Matejunas*

| | |
|---|---|
| DESTINY TOMPKINS, | SUPREME COURT OF THE STATE OF NEW YORK |
| Plaintiff, | COUNTY OF NEW YORK |
| vs. | INDEX NO: 160041/2017 |
| THE GAP, INC., BANANA REPUBLIC, LLC, JILL MATEJUNAS & MICHAEL GENNIS, | Civil Action |
| Defendants. | **NOTICE OF FILING OF NOTICE OF REMOVAL** |

**TO:    Clerk**
**Supreme Court of the State of New York**
**County of New York**
**60 Centre Street, Room 161**
**New York, New York 10007**

**SIR OR MADAM:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants The

Gap, Inc., Banana Republic, LLC and Jill Matejunas (collectively, "Defendants") have filed a Notice

of Removal of the above-captioned action in the United States District Court for the Southern

District of New York.

Attached hereto as **Exhibit A** is a copy of the Notice of Removal of this case.  Upon filing of

this Notice of Filing of Notice of Removal, Defendants shall give written notice thereof to John

Horowitz, Horowitz Law Group, PLLC, 61 Broadway, Suite 2125, New York, New York 10006,

attorney for Plaintiff Destiny Tompkins ("Plaintiff"), and to co-Defendant Michael Gennis, 40

Tamarack Lane, Pamona, NY 10970, who, upon information and belief, has not yet retained counsel in this matter.[1]

Pursuant to 28 U.S.C. §1446(d), the filing of the Notice of Removal in the United States District Court for the Southern District of New York, together with the filing of a copy of the Notice of Removal with this Court, effects the removal of this action, and this Court may proceed no further unless and until the action is remanded.

**LITTLER MENDELSON, P.C.**
Attorneys for Defendants
*The Gap, Inc., Banana Republic, LLC,*
*and Jill Matejunas*


By:   /s/ *Stacey D. Adams*
        Stacey D. Adams

Dated:  December 13, 2017

---

[1] Defendants are currently unaware of whether co-Defendant Gennis has been served by Plaintiff with the Summons and Complaint.

## CERTIFICATION OF SERVICE

I, STACEY D. ADAMS, certify that on this date I caused a copy of this Notice of Filing of Notice of Removal (with a copy of the Notice of Removal attached) to be served via e-mail and regular mail on John Horowitz , Horowitz Law Group, PLLC, 61 Broadway, Suite 2125, New York, New York 10006, attorney for Plaintiff Destiny Tompkins, and via regular mail upon co-Defendant Michael Gennis, 40 Tamarack Lane, Pamona, NY 10970.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.


                                           _/s/ Stacey D. Adams_____

Dated:  December 13, 2017                              Stacey D. Adams

# EXHIBIT C

Stacey D. Adams, Esq. (NJ Bar #022481998)
Dylan C. Dindial, Esq. (NJ Bar #073762014)
**LITTLER MENDELSON, P.C.**
A Professional Corporation
One Newark Center, Eighth Floor
Newark, New Jersey 07102
973.848.4700
Attorneys for Defendants *The Gap, Inc., Banana Republic, LLC, and Jill Matejunas*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DESTINY TOMPKINS, | Civil Action No. 17-cv-9759 |
| Plaintiff, | |
| vs. | **NOTICE TO ADVERSE PARTY OF FILING OF NOTICE OF REMOVAL** |
| THE GAP, INC., BANANA REPUBLIC, LLC, JILL MATEJUNAS & MICHAEL GENNIS, | *Electronically Filed* |
| Defendants. | |

TO:  **John Horowitz, Esq.,**          **Michael Gennis**
     **Horowitz Law Group, PLLC**      **40 Tamarack Lane**
     **61 Broadway, Suite 2125**       **Pamona, NY 10970**
     **New York, New York 10006**

**PLEASE TAKE NOTICE** that Defendants The Gap, Inc., Banana Republic, LLC and Jill

Matejunas (collectively, "Defendants"), in the action filed in the Supreme Court of the State of New

York, County of New York, bearing Index No. 160041/2017, have filed a Notice of Removal to the

United States District Court for the Southern District of New York on this 13th day of December,

2017 pursuant to 28 U.S.C. §§1441 and 1446.

A copy of such Notice of Removal is attached hereto.

                            **LITTLER MENDELSON, P.C.**
                            Attorneys for Defendants
                            *The Gap, Inc., Banana Republic, LLC,*
                            *and Jill Matejunas*


                            By:    /s/ *Stacey D. Adams*
                                   Stacey D. Adams

Dated:  December 13, 2017